# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3023
_____

In re: Genmar Holdings, Inc.

*Debtor*

------------------------------

Michael S. Dietz, Trustee

*Appellee*

v.

Michael Calandrillo

*Appellant*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: October 7, 2014
Filed: January 28, 2015

_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

The bankruptcy trustee for Chapter 7 debtor Genmar Holdings, Inc. commenced this adversary proceeding seeking to avoid as preferential a $65,000 payment made to Michael Calandrillo within ninety days of bankruptcy. See 11 U.S.C. § 547(b). The bankruptcy court[1] granted the trustee summary judgment. The Bankruptcy Appellate Panel (BAP) affirmed. Calandrillo appeals, arguing the payment was a "contemporaneous exchange for new value" that may not be avoided under § 547(c)(1).[2] Reviewing the grant of summary judgment *de novo*, we agree with the BAP that Calandrillo failed to prove the parties to the transaction intended a contemporaneous exchange and therefore affirm. See Contemporary Indus. Corp. v. Frost, 564 F.3d 981, 984 (8th Cir. 2009) (standard of review).

The relevant facts are undisputed. In April 2007, Calandrillo purchased a boat manufactured by Hydra-Sports, a subsidiary of Genmar Tennessee, a subsidiary of Genmar Holdings. Calandrillo claimed the boat was defective and commenced an arbitration proceeding. On February 19, 2009, Calandrillo entered into a settlement agreement with "Genmar Tennessee, Inc. . . . together with its . . . parents [and] subsidiaries." Calandrillo agreed to convey title to the boat to Genmar Tennessee, free

---

[1]The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

[2]At oral argument, Calandrillo raised two other issues. First, he contends that the $65,000 payment should be deemed to have been made outside the § 547(b)(4)(A) ninety-day preference period. We decline to consider this fact-intensive issue because it was not raised either to the bankruptcy court or to the BAP. See Singleton v. Wulff, 428 U.S. 106, 120-21 (1976). Second, he argues the bankruptcy court erred in ruling that the trustee's amended complaint adding Calandrillo as a defendant related back to the date of the original complaint because the applicable statute of limitations does not expressly allow relation back. See Fed. R. Civ. P. 15(c)(1)(A); 11 U.S.C. § 546(a). We decline to consider this issue because it was not argued in Calandrillo's brief on appeal, and the contention appears to be contrary to the alternative provisions in Rule 15(c)(1)(A)-(C), as the BAP discussed.

of liens and encumbrances; Hydra-Sports agreed to pay Calandrillo $205,000 in the following manner:

> A. Hydra-Sports shall pay to the Bank (which currently holds a lien on the Boat) such amounts as necessary to obtain a discharge of the Bank's lien on the Boat, and it is an express condition of this agreement that Hydra-Sports is to receive a lien waiver from the Bank immediately upon payment to the Bank . . .

> B. The remainder of the Settlement Payment shall be paid to the trust account of [Calandrillo's attorneys], in trust for and on behalf of [Calandrillo], no sooner tha[n] 15 days after Genmar Tennessee receives the lien waiver confirming the Bank's discharge of the lien and all title assignment documents . . . for the Boat.

The next day, the bank received $140,000 from a Genmar entity and issued a lien waiver. On February 25, Calandrillo executed a bill of sale conveying the boat to Genmar Tennessee. On March 4, he sent documents assigning title to Genmar Tennessee. On March 23, Genmar Holdings sent Calandrillo a check for the $65,000 settlement balance. On June 1, 2009, Genmar Holdings and twenty-one subsidiaries, including Genmar Tennessee, filed for bankruptcy. The trustee brought this suit seeking recovery of the $65,000 payment from Calandrillo as a preferential transfer. The $140,000 payment to the bank a month earlier was outside the ninety-day preference period in § 547(b).

The avoidance of preferential transfers under § 547 "is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy." In re Jones Truck Lines, Inc., 130 F.3d 323, 326 (8th Cir. 1997). Contemporaneous new value exchanges are excepted from avoidance because they "encourage creditors to continue doing business with troubled debtors who may then be able to avoid bankruptcy altogether," and "because other creditors are not adversely affected if the debtor's estate receives new value."

Id. To qualify for this exception, the creditor transferee must prove that an otherwise preferential transfer was "(A) intended by the debtor and the creditor . . . to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." § 547(c)(1).

Calandrillo claims that the § 547(c)(1) exception applies to the $65,000 payment because he provided new value to the debtor when he conveyed the boat in a contemporaneous exchange. "The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." In re Gateway Pac. Corp., 153 F.3d 915, 918 (8th Cir. 1998). Calandrillo bears the burden of proving this fact. § 547(g); Jones Truck Lines, 130 F.3d at 328. Here, the BAP affirmed the bankruptcy court's conclusion that Calandrillo presented no evidence permitting a reasonable fact-finder to find that the parties to the settlement agreement intended a contemporaneous exchange for new value. We agree.

Calandrillo's conveyance of the boat was completed on March 4, when he sent executed title documents to Genmar Tennessee. He received payment of the $65,000 settlement balance on March 23. This time lag, by itself, does not resolve whether the transaction was intended to be a "contemporaneous exchange." See 5 Resnick & Sommer, Collier on Bankruptcy ¶ 547.04[1][a] at 547-44 (16th ed. 2014) ("the passage of time does not necessarily negate that intent"). Many exchanges the parties intend to be contemporaneous cannot be completed instantly, or even within a few days. For example, in In re Lewellyn & Co., Inc., 929 F.2d 424, 428 (8th Cir. 1991), we upheld the bankruptcy court's finding that the parties intended stock purchases settled seven business days later to be contemporaneous exchanges. In cases where contemporaneous intent was found after trial, or conceded by the trustee, even a substantial delay in one part of the exchange has not defeated the § 547(c)(1) exception if the creditor explained why a reasonable delay was consistent with the requisite intent. See In re Dorholt, 239 B.R. 521, 525 (B.A.P. 8th Cir. 1999) (sixteen

-4-

days to perfect a security interest; summary judgment for trustee reversed), aff'd 224 F.3d 871 (8th Cir. 2000); In re Kerst, 347 B.R. 418, 424 (Bankr. D. Colo. 2006) (delayed car refinancing); 4 William L. Norton Jr., Norton Bankruptcy Law & Practice § 66:35 (3d ed. 2014). "[C]ontemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances." Dorholt, 224 F.3d at 874 (quotation omitted).

In this case, the essential question of the parties' intent is not conceded or obvious. Calandrillo argues the requisite intent can be found in the settlement agreement. The settlement agreement provided that Genmar Tennessee would make two payments to re-acquire clear title to the allegedly defective boat. First, the bank holding a substantial lien would be paid and provide a lien waiver. Initially satisfying an existing lien creditor is not inconsistent with the parties intending a contemporaneous exchange. Second, after Calandrillo transferred the necessary title documents to Genmar Tennessee, he would be paid the $65,000 balance of the "purchase" price. Again, providing a reasonable time for the buyer to review title documents is a type of delay that, if reasonable, would not be inconsistent with the parties intending a contemporaneous exchange. But here, the settlement agreement provided that the final $65,000 payment would be made to Calandrillo *no sooner than* fifteen days after Genmar Tennessee received the lien waiver and title documents. Thus, on its face, the settlement agreement reflected that what might have been a contemporaneous exchange of a boat for $205,000 was instead a short-term loan of $65,000 to the debtor. A debtor's repayment of a loan within ninety days of bankruptcy is an avoidable preference.

Calandrillo produced no evidence explaining the reason for this open-ended payment delay in the settlement agreement. The absence of an explanation why a *mandatory* delay of at least fifteen days was reasonably necessary brings this case squarely within the purview of our decision in In re Armstrong, 291 F.3d 517, 525 (8th Cir. 2002). In Armstrong, a casino provided chips to a gambler in exchange for

"markers" that would be paid out of the gambler's bank account when deposited by the casino. But while the casino would deposit a customer's personal check when received, it agreed to hold the gambler's markers for fourteen days before making the deposits, later extended to thirty days. We upheld the bankruptcy court's conclusion there was no evidence of an intended contemporaneous exchange. Instead, the gambler incurred debts when the markers were signed that did not become due for thirty days. Agreeing not to deposit the markers until a certain date "convert[ed] a negotiable instrument into a loan." Id. at 524. Likewise here, a reasonable fact-finder could only conclude that the settlement agreement's unexplained fifteen-day holding period evidenced the intent to provide the debtor a short-term loan.

For this reason, we conclude the bankruptcy court and the BAP properly granted summary judgment to the trustee because there was no evidence the parties intended a contemporaneous exchange, a critical issue on which Calandrillo had the burden of proof. Given our resolution of this issue, we need not -- and do not -- address other issues disputed by the parties, including whether there was new value within the meaning of § 547(c)(1)(A), whether the discrepancy between $65,000 and the total amount paid for the boat would affect the § 547(c)(1) analysis, whether there was "in fact a substantially contemporaneous exchange" for purposes of § 547(c)(1)(B), and whether debtor Genmar Holdings could have the requisite intent in a transaction between Calandrillo and Genmar Tennessee.

The judgment of the BAP is affirmed.

_____