# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 19-6013

_____

In re: Gas-Mart USA, Inc.

*Debtor*

------------------------------

Richard S. Lauter, not individually but solely as Creditor Trustee of the Gas-Mart USA, Inc. Creditor Trust

*Plaintiff - Appellant*

v.

Wells Fargo Bank, National Association

*Defendant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 19, 2020
Filed:  March 19, 2020

_____

Before SALADINO, Chief Judge, SCHERMER and SHODEEN, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

Richard S. Lauter, as Trustee of the Gas-Mart USA, Inc. Creditor Trust (Trustee), appeals the bankruptcy court's[1] decision applying the contemporaneous exchange for new value preference defense under Bankruptcy Code §547(c)(1) to except payments by Gas-Mart USA, Inc. (Debtor) to Wells Fargo Bank, National Association (Wells Fargo) from avoidance as preferences. We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. §158(b). For the reasons that follow, we affirm.

## ISSUES

There are four issues we need to address; each concerns the use of the §547(c)(1) defense. The first is whether new value was provided by the release of Wells Fargo's junior liens where a senior lienholder voluntarily released its liens for less than full payment of its debt. Second, whether Wells Fargo provided new value to the Debtor when the Internal Revenue Service (IRS), a secured creditor senior to Wells Fargo, was paid from the proceeds of a sale of the Debtor's assets and voluntarily released its liens. Third, whether a $100,000 payment made by the Debtor to Wells Fargo one day before a sale closing was intended to be a contemporaneous exchange. Fourth, whether Wells Fargo's release of claims against Phillips 66 and KCRC resulted in new value to the Debtor intended by the parties to be a contemporaneous exchange. In each instance, we see no error in the bankruptcy court's application of §547(c)(1).

## BACKGROUND

Gas-Mart USA, Inc. (Debtor) owned and operated gas stations and convenience stores in multiple states. In July 2015, the Debtor and its affiliated entities filed petitions for relief under Chapter 11 of the Bankruptcy Code. In the confirmation order, the Trustee was appointed and vested with the power to prosecute avoidance actions.

---

[1] The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

Before its bankruptcy filing, the Debtor had deposits on account at Wells Fargo. The Debtor issued checks in excess of its deposit balances in breach of the terms of the parties' account agreements. To resolve the Debtor's breach, the parties entered into a letter agreement setting forth repayment terms for the amount by which the Debtor's checks exceeded its account balances. The Debtor also granted Wells Fargo security interests in substantially all its assets.

In March 2015, the Debtor entered into an agreement to sell all its real and personal property assets at 19 Gas-Mart locations for $27 million (Sale). The parties also agreed to assign a value of approximately $600,000 to the inventory being sold. Importantly, the Sale contract required the Sale of the assets to be free and clear of liens. The Sale closed on April 30, 2015.

Sun Life received over $14 million of the Sale proceeds in partial payment on its debt. Although it was not paid in full, Sun Life voluntarily released its liens on all assets of the 19 stores and consented to the Sale. Wells Fargo received $1.3 million of the Sale proceeds in partial payment on its debt. On April 29, 2015, the Debtor paid Wells Fargo the amount of $100,000. Separately, the Debtor made payments to Wells Fargo in the amount of $73,490.67 during the preference period. In order to comply with the buyer's requirement that the Sale be free and clear of liens, Wells Fargo released its liens.

Prior to the Debtor's bankruptcy filing, certain stores managed by the Debtor were owned by KCRC. KCRC's affiliate, Phillips 66, supplied fuel to the Debtor. When the Debtor became delinquent in its obligations to KCRC, it agreed to return locations and inventory to KCRC in exchange for a credit toward the amount that it owed KCRC. Wells Fargo claimed that because the inventory was subject to its liens, the inventory should not have been transferred to KCRC without Wells Fargo's consent. In order to close the Sale, Phillips 66 agreed to provide credit to the Debtor up to approximately $2 million to cover fuel purchases, provided Wells Fargo released Phillips 66 from any liability relating to the inventory transfer. Wells

3

Fargo released its claims against KCRC and Phillips 66 as part of an agreement between Phillips 66, KCRC, and Wells Fargo.

The Trustee filed an adversary proceeding seeking avoidance and recovery of the $1.3 million, $100,000, and $73,490.67 payments to Wells Fargo as preferences. After trial, the bankruptcy court held that the Trustee could avoid and recover the $73,490.67 paid to Wells Fargo but ruled in favor of Wells Fargo in that $1.3 million and $100,000 payments qualified for the §547(c)(1) defense.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. See *Silverman Consulting, Inc. v. Canfovr Woods Prod. Marketing (In re Payless Cashways, Inc.),* 394 F.3d 1082, 1083 (8th Cir. 2005) (citation omitted). "The existence of intent, contemporaneousness, and new value are questions of fact." *Tyler v. Swiss Am. Secs., Inc. (In re Lewellyn & Co., Inc.),* 929 F2d 424, 427 (8th Cir. 1998) (citation omitted); *Official Plan Comm. v. Expeditors Int'l of Washington, Inc. (In re Gateway Pacific Corp.),* 153 F.3d 915, 918 (8th Cir. 1998) (citation omitted) ("The existence of contemporaneous intent is a question of fact, the determination of which we review for clear error"). "[I]nterpretation of the Bankruptcy Code is reviewed *de novo*." *Velde v. Kirsch*, 543 F.3d 469, 472 (8th Cir. 2008).

## DISCUSSION

Bankruptcy Code §547(b) allows a trustee to avoid pre-petition preferential transfers. "In general, an avoidable preference is a transfer of the debtor's property to or for the benefit of a creditor, on account of the debtor's antecedent debt, made less than ninety days before bankruptcy while the debtor was insolvent, that enables the creditor to receive more than she would in a Chapter 7 liquidation." *Lindquist v. Dorholt (In re Dorholt),* 224 F.3d 871, 873 (8th Cir. 2000) (citing 11 U.S.C. §547(b)).

4

Section 547(c)'s contemporaneous exchange for new value defense prohibits a trustee from avoiding a transfer under §547(b):

> (c) . . . (1) to the extent that such transfer was--
> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> > (B) in fact a substantially contemporaneous exchange;

11 U.S.C. §547(c)(1). "[T]he creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of [§547]." 11 U.S.C. §547(g). " 'The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange.' " *In re Lewellyn & Co., Inc.*, 929 F.2d at 428 (quoting *Creditors' Comm. v. Spada (In re Spada)*, 903 F.2d 971, 975 (3d Cir. 1990)). "The modifier 'substantial' makes clear that contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances." *Dorholt,* 224 F.3d at 874 (citation and quotation marks omitted).

The Bankruptcy Code defines "new value" as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. §547(a)(2). The release of a lien can constitute new value. *Velde v. Kirsch*, 543 F.3d 469, 474 (8th Cir. 2008) (recognizing new value under §547(c)(1) by release of a lien on debtor's assets); *Velde v. Reinhardt*, 294 Fed. Appx. 242, 243 (8th Cir. 2008) (same). "Contemporaneous new value exchanges are excepted from avoidance because they 'encourage creditors to continue doing business with troubled debtors who may then be able to avoid bankruptcy altogether,' and 'because other creditors are not adversely affected if the debtor's estate receives new value.'" *Dietz v. Calandrillo (In re Genmar Holdings, Inc.),* 776 F.3d 961, 963 (8th Cir. 2015) (quoting *Jones Truck Lines, Inc. v. Central States, S.E. and S.W. Area Pension Fund*

*(In re Jones Truck Lines, Inc.),* 130 F.3d 323, 326 (8th Cir. 1997)). "[A] transfer of new value by a third party to the debtor may satisfy the 'new value' requirement of §547(c)(1)(A)." *Jones Truck Lines, Inc.,* 130 F.3d at 327 (citations omitted).

Wells Fargo conceded the *prima facie* case under § 547(b) and does not appeal the bankruptcy court's award of $73,490.67 in favor of the Trustee. However, the Trustee appeals the bankruptcy court's decision that the $1.3 million and $100,000 payments to Wells Fargo were excepted from avoidance based on Bankruptcy Code §547(c)(1).

I.     Did Sun Life's release of its liens for less than full payment of its debt permit Wells Fargo's lien releases to provide new value?

The bankruptcy court's decision is correct under Bankruptcy Code §547(c)(1) standards and the court appropriately relied upon evidence in the record to decide that Wells Fargo's release of its liens on the Debtor's furniture, fixtures, and equipment (FF&E) resulted in new value to the Debtor exceeding the $1.4 million in payments made to it in connection with the Sale.

The Trustee does not dispute that that the analysis for determining new value from a lien release requires a determination of the: (1) value of the underlying property; and (2) amount and priority of other liens on the property. And he does not contest the bankruptcy court's valuation of the property upon which Wells Fargo released its liens in an amount exceeding $1.4 million. The disagreement between the parties lies in the bankruptcy court's determination of the amount and priority of other liens on the property. The Trustee believes that Wells Fargo's release of its liens did not constitute new value. We disagree.

Wells Fargo held junior liens on the Debtor's FF&E in each of the 19 stores sold. The bankruptcy court properly determined the value of the senior liens on the FF&E serving as Wells Fargo's collateral and held that value was provided by the

release of Wells Fargo's liens.[2] For three locations, Wells Fargo's security interest in the FF&E was junior to Equity Bank. For the other locations, Wells Fargo's security interest in the FF&E was junior to Sun Life. Equity Bank received full payment from the Sale. Sun Life agreed to release its liens for payment of less than the amount it was owed. As a result, funds were made available to pay Wells Fargo, plus a sum for the Debtor. The record supports the bankruptcy court's decision.

When, as in this case, a senior secured lender voluntarily releases its liens for less than full payment and a junior secured creditor releases its liens, the requirement for providing new value under §547(c)(1) by the junior creditor is satisfied.

The Trustee believes a *per se* rule should apply that if a senior creditor is not paid in full from the value of its collateral as the result of a sale, that release of junior liens on the sale property should have no corresponding value for purposes of §547(c)(1). We disagree. The situation in this case proves the exception to such a rule. Like the bankruptcy court, we must consider the allocation of sale proceeds in the context of Sun Life's waiver of a portion of its liens. According to the Trustee, a court must consider "the reality of the situation," which he deems to be how the Sale proceeds would be allocated without the waiver. The reality of the situation is that Sun Life waived payment in full for release of its liens, providing value to Wells Fargo.

The Trustee disagrees with the bankruptcy court's statement that the amount accepted by Sun Life reflects the value it placed on its liens. He argues that Sun Life took less than the amount it was owed because Wells Fargo demanded payment in exchange for release of its junior liens, a demand that the Trustee believes was improper. But the deal reached by the parties reflected the requirement of the buyer that the Sale result in a purchase free and clear of liens. We see no error with the

---

[2] Wells Fargo does not claim that any value existed for real estate mortgages it held or its liens on the Debtor's inventory sold through the Sale. The dispute in this appeal concerns only the value of Wells Fargo's liens on the Debtor's FF&E sold as part of the Sale.

bankruptcy court's determination concerning the value that Sun Life placed on its liens. It makes sense in the context of the situation. Sun Life's waiver of full payment facilitated the Sale closing by allowing funds for Wells Fargo (and the Debtor) and causing Wells Fargo to release its liens.

II.    Did the IRS's lien releases enable Wells Fargo's lien releases to provide new value to the Debtor?

According to the Trustee, the bankruptcy court should have treated the IRS as having liens on the Debtor's FF&E. The bankruptcy court acknowledged that Wells Fargo did not attribute any value to its security interest in the Debtor's inventory because the IRS had a senior security interest in the inventory and the approximately $600,000 in Sale proceeds allocated to the inventory were paid to the IRS. The court also stated that the IRS agreed to release its liens. We agree with the bankruptcy court's determination. It is uncontested that the IRS filed a tax lien over a year before the Sale for the amount greater than $1.5 million, that tax lien was senior to Wells Fargo's lien, and the IRS received approximately $600,000 from the Sale. The Trustee argues that the IRS released only its security interest in the inventory, not liens it had on the Debtor's FF&E. Since the buyer required as a condition to closing that all liens on the Sale property be released and the Sale closed with payment to the IRS of only approximately $600,000, the lien of the IRS on the Debtor's FF&E was paid to its satisfaction.

The bankruptcy court also pointed out that although the IRS initially filed secured proofs of claim, it subsequently (after it received the $600,000) amended its proofs of claim to eliminate any secured claim. It appropriately stated that the record did not support the Trustee's argument that the amendments to the IRS's proof of claim were the result of having received distributions from other asset sales in the Debtor's case. The bankruptcy court had ample evidence upon which to find that the IRS released its liens on all assets at the Sale. In fact, this is shown by the sale orders from the two major asset sales in the Debtor's bankruptcy case.

III.   Did the parties intend for Wells Fargo's $100,000 payment to be a contemporaneous exchange?

The Trustee argues that the parties did not intend for the $100,000 payment to Wells Fargo on April 29, 2015 to be substantially contemporaneous with Wells Fargo's lien releases because the $100,000 payment was made by the Debtor only as a requirement for further communications with Wells Fargo, not in exchange for the lien releases. Based on the record, we see no clear error in the bankruptcy court's decision that these transactions were all made as part of one deal and the parties intended the $100,000 payment to be made as an advance payment for the deal already reached by the parties regarding the April 30 Sale. Nothing in the record causes us to question those findings. The fact that this amount was paid prior to the date of the Sale closing and was not paid from the Sale proceeds does not change the result.

IV.   Did Wells Fargo's release of its claims against Phillips 66 and KCRC result in: (a) new value to the Debtor; (b) that the parties intended to be a contemporaneous exchange?

Value was provided to the Debtor in connection with Wells Fargo's release of claims against Phillips 66 and KCRC for the inventory transferred. As the bankruptcy court found, the evidence shows that Wells Fargo's release was made as a condition to a two year and two month restructuring of the Debtor's obligation to Phillips 66 to pay for past fuel purchased, and for Phillips 66 to extend new credit to the Debtor for fuel purchases. The record supports the bankruptcy court's statement that without the credit provided by Phillips 66, the Debtor would have been out of business. The court also appropriately pointed out that the Debtor needed to keep its relationship with Phillips 66 in place because the buyer intended to assume the Phillips 66 agreement as part of the Sale.

The Trustee argues that the bankruptcy court incorrectly found that the parties intended a contemporaneous exchange for new value in connection with the Phillips 66 release because the only deal in place as of the April 30 Sale closing was for a 90-day forbearance from collecting old debt, which is not new value. The value

9

from the Phillips 66 restructuring was documented in a promissory note executed 60 days after the Sale closing, on July 1, 2015. The Trustee believes that the bankruptcy court erred when it considered the promissory note to be the documentation of a deal made earlier. There is ample support in the record for the bankruptcy court's decision and it makes sense in the context of the proceedings. Each party pointed to testimony and other evidence that it believes support its decision. We give deference to the bankruptcy court's assessment of the credibility of witnesses and we see no clear error with the bankruptcy court's review of the evidence.

The bankruptcy court appropriately quantified the value received by the Debtor in exchange for the Phillips 66 release, *i.e.*, the value of the new credit given to the Debtor by Phillips 66, as $552,000. Because of the new credit extended by Phillips 66, the Debtor was able to continue to receive gasoline sales revenue from its operations in May and June 2015. The $552,000 amount consists of $276,000 per month for each of those months. To establish that amount, the court appropriately looked to the amount that Phillips 66 was willing to pay the Debtor post-bankruptcy for the right to receive the Debtor's gasoline sales revenues under the Debtor's post-petition court approved consignment arrangement with Phillips 66. As part of the consignment arrangement, Phillips 66 agreed to provide fuel at the Debtor's locations if it retained ownership of the fuel and received the proceeds of the fuel sales. Phillips 66 paid the Debtor $12,000 per month for each of the Debtor's locations, which amounted to $276,000 per month for all of the Debtor's locations.

The Trustee argues that Wells Fargo failed to provide sufficient evidence of new value because the $276,000 per month under the consignment arrangement was attributable, at least in part, to fees for certain services provided by the Debtor post-petition, not to the right to receive fuel sales at the Debtor's locations. We see no error with the bankruptcy court's interpretation of the consignment arrangement and application of it to determine the amount of the new value. And as the bankruptcy court pointed out, its adoption of $552,000 as the amount of new value from the Phillips 66 release was a conservative estimate. It pointed to specific additional

10

possible sources of value: sales of items inside the Debtor's stores made possible only by having fuel to sell to customers; and data showing that actual gas purchases may have been higher than $276,000 each month.

## CONCLUSION

For the reasons stated, the decision of the bankruptcy court is AFFIRMED.

_____